# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Beales and Athey
Argued by videoconference


AISHA INSHIRA NELSON

v.        Record No. 0081-20-1

CITY OF VIRGINIA BEACH

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
JUNE 1, 2021


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James Clayton Lewis, Judge

Krista M. Sheets for appellant.

Alicia M. LeClair, Assistant Commonwealth's Attorney (Colin D.
Stolle, Commonwealth's Attorney for the City of Virginia Beach, on
brief), for appellee.


Following a bench trial, appellant Aisha Inshira Nelson was convicted in the Circuit Court

of the City of Virginia Beach of violating Virginia Beach City Code § 23-8.1, "Maliciously

giving false report of crime, accident, etc.," a Class 1 misdemeanor.  Nelson appeals the

conviction, arguing that the trial court erred in denying her motion to strike the charge "because

the ordinance requires a person 'to call any 9-1-1 communications operator with intent to harass'

and the evidence was insufficient to establish that Appellant placed the call and that Appellant

had the requisite intent to harass."[1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Nelson was also convicted of violating Virginia Beach City Code § 23-7.1 for failing to
provide her identification to a police officer.  That conviction is not before us on appeal as
Nelson did not appeal that conviction to this Court.

## I. BACKGROUND[2]

On May 11, 2019, at approximately 6:50 a.m., Sergeant A.E. Gregg of the City of Virginia Beach Police Department was dispatched to a McDonald's restaurant in Virginia Beach in order to address a report of "a disorderly female," later identified as Nelson. On that morning, Nelson was at the McDonald's with her boyfriend, Adarius Lambert.

When Sergeant Gregg arrived at the McDonald's, the manager on duty told him that she wanted Nelson to leave the property. Gregg led Nelson outside and "attempted to explain the situation" to her, but she "would not listen to anything he had to say." Gregg stated that Nelson was "argumentative and would not let him speak," and he described her as "extremely uncooperative." Gregg testified that Nelson told him she was "not going to leave and that she wanted to speak with his supervisor."

Sergeant Gregg asked Nelson to remain outside while he went back into the McDonald's to speak with the manager. Gregg testified that while he was inside, Nelson "called 9-1-1 and sought to speak with his supervisor." When Gregg exited the restaurant, he could hear Nelson speaking with the 9-1-1 operator. Gregg then informed Nelson that she had misused 9-1-1 and asked her for her identification, which she repeatedly refused to provide.

During cross-examination at Nelson's trial, Gregg admitted that he had incorrectly told Nelson that he was the supervisor on duty and acknowledged that the proper protocol is to provide citizens, upon their request, with his supervisor's information or the information for internal affairs. Gregg eventually did give Nelson his supervisor's contact information, but he did not do so until after she had been arrested and transported to jail.

---

[2] The record in this case includes a trial judge-approved statement of facts in lieu of a transcript.

Sergeant Gregg also acknowledged that, because he was inside the McDonald's when the call was made, he did not actually see whether Nelson or Lambert had placed the call to 9-1-1. Because Gregg was still at the scene after Nelson ended the 9-1-1 call, he notified dispatch that no further response was necessary, and no additional units responded as a result of Nelson's call. Gregg acknowledged that Nelson made no threats to anyone, including the 9-1-1 operator. He also agreed that Nelson was simultaneously talking to him and the 9-1-1 operator during the call and that this "multitasking could be a possible explanation" for her delayed responses to the 9-1-1 operator. Gregg stated that it was possible that Nelson ended the call after the 9-1-1 operator told her that it was not appropriate to call 9-1-1 in order to speak with an officer's supervisor. Gregg further agreed that Nelson ended the call either in response to his request or to the 9-1-1 operator's request.

At Nelson's trial, the City of Virginia Beach (the "City") introduced the complete audio recording of the 9-1-1 call between Nelson and the 9-1-1 operator. The call, which lasted a total of one minute and thirty-six seconds, proceeded as follows:

> [Nelson]: That's the only time.
> Operator: Virginia Beach 9-1-1, where's the emergency?
> [Nelson]: Umm, McDonald's off of First Colonial Road . . . .
>            What is this officer's name?
> Operator: You said at the McDonald's?
> [Nelson]: Yes, off of First Colonial Road.
> Operator: Ok . . . what are you . . .
> [Nelson]: Is that . . . go over there . . . is that him?
> Operator: I have a 601 First Colonial Road, at McDonald's?
>           Hello?
> [Nelson]: Yes, that is.  Yes, uh-huh.
> Operator: Ok, what's the emergency?
> [Nelson]: Yes, I'm here with the officer, and I want to speak with
>            his supervisor.  I feel like the situation that he is
>            handling is being mishandled by him in all sorts of
>            fashions.  Like, I just can't deal with him.  He is not
>            easy to talk to; he is not being reasonable whatsoever;
>            and I am not going anywhere until I speak with his
>            supervisor.
> Operator: So, why are you calling 9-1-1?

[Nelson]: Because they called 9-1-1. I'm calling 9-1-1 because I
need to speak with his supervisor.

Operator: Ok, well ma'am, that's a . . . you are not supposed to
call 9-1-1 to speak with somebody.

[Nelson]: It is . . . it is . . .

Operator: What is your name?

[Nelson]: I can . . . I can make whichever phone call I want.

Operator: Ok, well ma'am . . .

[Nelson]: No . . .

Operator: I am just letting you know 9-1-1 is for life and death
emergencies.

[Nelson]: . . . when he's threatening to arrest me. No.

Operator: What is your name? What is your name? Hello . . .
hello ma'am . . . hello . . . ma'am.

Lambert testified in Nelson's defense. He stated that while he and Nelson were at the McDonald's, they requested a refund from the restaurant's cashier, whom Lambert claimed was "hostile and irrational and would not issue the refund." Lambert stated that "at all times [Nelson] kept calm" but that the cashier acted irrationally and called the police. Lambert testified that when Sergeant Gregg arrived, Gregg told Nelson that she was trespassing and asked her to step outside. Lambert stated that while Gregg went back inside McDonald's, he dialed 9-1-1 on his cell phone to find out the name of Gregg's supervisor. He testified that he handed his phone to Nelson "as soon as he heard the 9-1-1 operator say, 'Virginia Beach 9-1-1, where's the emergency?'" He stated that while Nelson was on the phone with the 9-1-1 operator, Gregg exited the McDonald's, approached them, and told Nelson to hang up the phone. Nelson ended the call and handed the phone back to Lambert.

At the conclusion of the City's case, Nelson moved to strike the evidence. She renewed the motion at the conclusion of all the evidence.[3] The trial court denied both motions and convicted Nelson of violating Virginia Beach City Code § 23-8.1 and Virginia Beach City Code

---

[3] Nelson did not present any additional evidence after the initial motion to strike. Lambert, Nelson's sole witness, had already testified on November 7, 2019, the original date of Nelson's trial. Because Sergeant Gregg was ill and could not appear to testify on that date, the trial was continued until December 19, 2019.

§ 23-7.1. For the conviction under City Code § 23-8.1, the trial court sentenced Nelson to 180 days in jail with 150 days suspended.

## II. ANALYSIS

On appeal to this Court, Nelson assigns error to the trial court's decision "denying Appellant's motion to strike the harass a 9-1-1 operator charge under Virginia Beach City Code § 23-8.1 because the ordinance requires a person 'to call any 9-1-1 communications operator with intent to harass' and the evidence was insufficient to establish that Appellant placed the call and that Appellant had the requisite intent to harass." On brief and at oral argument to this Court, Nelson makes two arguments in support of her assignment of error. First, she contends that she did not violate the ordinance because she was not the individual who placed the 9-1-1 call. Second, she argues that, to be guilty of violating the ordinance, she must have possessed the intent to harass the 9-1-1 operator at the time the call was placed and that the evidence failed to prove this element.

## A. Standard of Review

"Ordinarily, when faced with 'a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prevailing party, including any inferences the factfinder may reasonably have drawn from the facts proved.'" Herrington v. City of Virginia Beach, 71 Va. App. 656, 661 (2020) (quoting Hannon v. Commonwealth, 68 Va. App. 87, 92 (2017)). "The judgment of conviction will be reversed only when the ruling is plainly wrong or without evidence to support it." Cordon v. Commonwealth, 280 Va. 691, 694 (2010). "[I]t is just as obligatory upon the appellate court, to set aside . . . the judgment of a court, when it is, in its opinion, contrary to the law and evidence, and therefore plainly wrong, as it is to sustain it when the reverse is true." Preston v. Commonwealth, 281 Va. 52, 57 (2011) (omission in original) (quoting Hickson v. Commonwealth, 258 Va. 383, 387 (1999)). "[W]hen a challenge

- 5 -

to a conviction 'presents the question whether the facts proved, and the legitimate inferences drawn from them, fall within the language of a[n ordinance], we must construe [the ordinance's] language to answer the question.'" Herrington, 71 Va. App. at 661 (second and third alterations in original) (quoting Smith v. Commonwealth, 282 Va. 449, 453-54 (2011)). Such a challenge "presents a pure question of law which we consider *de novo* on appeal." Id. (quoting Smith, 282 Va. at 454).

"In interpreting an ordinance, we apply the same rules of construction applicable to statutes." Id. When analyzing a statute "courts 'are required to ascertain and give effect to the intention of the legislature, which is usually self-evident from the statutory language.'" Armstead v. Commonwealth, 55 Va. App. 354, 360 (2009) (quoting Johnson v. Commonwealth, 53 Va. App. 608, 612 (2009)). "Consequently, we 'apply[ ] the plain meaning of the words unless they are ambiguous or [doing so] would lead to an absurd result.'" Eley v. Commonwealth, 70 Va. App. 158, 164 (2019) (alterations in original) (quoting Wright v. Commonwealth, 278 Va. 754, 759 (2009)). In addition, "it is a 'settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary.'" Farrakhan v. Commonwealth, 273 Va. 177, 181 (2007) (quoting Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 340 (1998)). Finally, just as we must with penal statutes, we construe ordinances that impose criminal penalties "'strictly against the [City],' giving defendants 'the benefit of any reasonable doubt about the[ir] construction.'" Eley, 70 Va. App. at 164 (second alteration in original) (quoting Foley v. Commonwealth, 63 Va. App. 186, 192, 198 (2014)); see also Herrington, 71 Va. App. at 661-62.

B.  Virginia Beach City Code § 23-8.1(b) and the Sufficiency of the Evidence

Virginia Beach City Code § 23-8.1(b) provides:

> It shall be unlawful for any person without intent to report an emergency, but with intent to harass, to call any "911"

communications operator. Repeated calling of any "911" communications operator, without intent to report an emergency, and after having been acknowledged by such operator, shall constitute violation of this section.

It is undisputed that Nelson made only one phone call to 9-1-1. Her conviction arose from her alleged violation of the first sentence of Virginia Beach City Code § 23-8.1(b). In that sentence, the words "without intent to report an emergency, but with intent to harass" describe the manner in which the call must be made. Therefore, giving effect to the plain and ordinary meaning of that first sentence, we agree with Nelson that the City was required to prove that Nelson possessed the intent to harass the 9-1-1 operator at the time the call was placed.

We next turn to the meaning of the phrase "intent to harass." "Harass" means "to vex, trouble, or annoy continually or chronically (as with anxieties, burdens, or misfortunes)." Harass, Webster's Third New International Dictionary (2002). Moreover, because each part of the ordinance is presumed to have some effect, see Farrakhan, 273 Va. at 181, simply establishing that the call to 9-1-1 was made "without intent to report an emergency" is insufficient to prove the separate element that it was made with "intent to harass." Otherwise, the element of the ordinance requiring the defendant to call "with intent to harass" would be rendered superfluous. Applying the plain language of the ordinance to the evidence in this case, the record fails to establish that Nelson had the intent to harass the 9-1-1 operator at the time the call was placed.

Nelson repeatedly stated her intention for making the phone call while she was on the call with the 9-1-1 operator. When the 9-1-1 operator answered the call and asked Nelson about the emergency, Nelson explained that she wanted to speak with Sergeant Gregg's supervisor because she felt that Sergeant Gregg was mishandling the situation at the McDonald's restaurant. When asked specifically why she was calling 9-1-1, Nelson responded, "Because they called 9-1-1. I'm calling 9-1-1 because I need to speak with his supervisor." No evidence was presented to

establish that Nelson had any other intent at the time the call was made other than her stated intent of speaking with Gregg's supervisor, whose information Gregg had refused to provide. Although Nelson may have been uncooperative and argumentative with Sergeant Gregg, the evidence fails to show that Nelson intended to harass the 9-1-1 operator.[4] Nelson only stayed on the line with the operator for a minute and thirty-six seconds, she expressed her purpose for making the call, and, according to Sergeant Gregg's testimony, she ended the call either in response to Gregg's request or at the admonition of the 9-1-1 operator.

The City asserts Nelson's "intent to harass the 911 communications operator is demonstrated by her behavior through the entire interaction with law enforcement" and that after being "extremely uncooperative" with law enforcement, Nelson "determined that the situation was not being handled in the manner she wanted so she decided to call 9-1-1 to harass the 911 operator because she couldn't 'deal with' Sergeant Gregg." The City notes that for the one minute and thirty-six seconds that Nelson was on the call, the "911 operator was unable to answer real emergency call[s]" and that "[a]t no point did the Appellant express that there was a legitimate emergency or that she felt she was in danger." While these arguments validly illustrate that Nelson's 9-1-1 call was certainly inappropriate, that it constituted an improper use of 9-1-1 emergency services, and that she did not have the intent to report an emergency, they do not support the separate element that Nelson had the "intent to harass" the 9-1-1 operator at the beginning of the call, as required by the plain language of the ordinance. Consequently, because the evidence in the record before us fails to show that Nelson had the "intent to harass" the 9-1-1

---

[4] At oral argument before this Court, the attorney representing the City agreed that under Virginia Beach City Code § 23-8.1(b), the 9-1-1 operator must be the subject of the defendant's "intent to harass."

operator at the time the call was made, we hold that the trial court erred in convicting Nelson of violating Virginia Beach City Code § 23-8.1(b), and we, therefore, reverse her conviction.[5]

III. CONCLUSION

Clearly, Nelson's one brief call to 9-1-1 was inappropriate and should not have been made. However, even viewing the evidence in the light most favorable to the City, as we must because it was the party that prevailed in the trial court, the circuit court erred in convicting Nelson of violating Virginia Beach City Code § 23-8.1(b). Even accepting that Nelson was disruptive at the McDonald's and that she was "extremely uncooperative" during the encounter with Sergeant Gregg, the evidence failed to prove that she also had the "intent to harass" the 9-1-1 operator when the call was made, as required by the plain language of the ordinance. Nelson consistently told the 9-1-1 operator that she was calling to speak with Sergeant Gregg's supervisor, which established that she was calling "without intent to report an emergency" – but did not show that she also had the required "intent to harass" during her sole call to 9-1-1 of one minute thirty-six seconds. Furthermore, neither her earlier allegedly disorderly behavior at the McDonald's nor her inappropriate, improper use of 9-1-1 emergency services proved that

---

[5] Nelson also argues that the evidence was insufficient to prove that she placed the call to the 9-1-1 operator. She states that the undisputed testimony shows that Lambert used his personal cell phone to make the call and that he handed the phone to Nelson as soon as he heard the operator speak. In response, the City argues that, even if Nelson did not actually place the call, the fact that she was the only individual to speak with the 9-1-1 operator during the call would be sufficient to satisfy the element requiring Nelson "to call any '911' communications operator." As the Supreme Court has stated, "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" Butcher v. Commonwealth, 298 Va. 392, 396 (2020) (quoting Commonwealth v. White, 293 Va. 411, 419 (2017)). Because the best and narrowest ground for deciding this case is that the evidence failed to prove that Nelson possessed the intent to harass at the time the call was made, we do not reach Nelson's additional argument because doing so would not change our decision that the necessary elements of the ordinance for a conviction were not satisfied.

she intended to harass the 9-1-1 operator, as clearly required by the ordinance.  Therefore, for all of these reasons, we reverse and dismiss Nelson's conviction.

Reversed and dismissed.